CONCURRING OPINION BY
President Judge PELLEGRINI.
I concur with the result reached by the majority because of the issues that have been raised and the interlocutory nature of the appeal. I write separately because I do not believe that the challenge regarding whether the tap-in fees are excessive is maintainable under the facts of this case'.
In February 1998, the Lower Salford Township Authority (Authority) approved a resolution setting a $6,875.00 tapping fee. After the enactment of the resolution, in August 1998, the Authority and Hidden Creek, L.P. (Developer) entered into an “Agreement for the Construction of Sewer Lines” (Agreement) under which the Developer would construct sewer lines and pay the Authority for the costs incurred by inspecting and administering the project. The Agreement also provided that the Developer was to pay $6,875.00 per each equivalent dwelling unit (EDU) as a tapping fee,[1] but that those tapping fees would be offset by the cost of certain off-site sewer improvements made by the Developer.[2] The Developer- made its first tapping fee payment on January 29, 1999, and its last payment on January 21, 2000.
On September 25, 2000, the Developer filed a writ of summons to initiate litigation to recover its alleged overpayment of tapping fees that ultimately led- to the First Amended Complaint (Complaint) filed in'November 2006,-which alleged that the Authority overcharged the Developer by improperly calculating the tapping fees in violation of the Municipal Authorities Act (MAA) [3] and sought damages representing the excess tapping fees paid to the Authority, plus interest and costs. The Authority claimed that the claim, among other things, was time barred.
The parties agree that a two-year statute of limitations applies, but disagree on when the statute of limitations began to run. The Authority argues that the limitations period began to run--(at the latest) when the contract was'executed and that the Developer was obviously aware of the amount of the tapping fee. The Developer asserts that because it is' seeking a refund of overpayments, its- cause of action did not accrue until it paid the allegedly erroneous fees, and that it filed its action within two years of its first payment.
While the majority finds -that the Developer was harmed upon the execution of the Agreement, the moment that it-was legally obligated to pay an allegedly unlawful fee, it remands to determine whether the Developer was aware under, the discovery rule that the-tapping fee was excessive due *614 to the Authority’s apparent failure to comply with the MAA in adopting its, tapping resolution which may have. deprived the Developer of information necessary to evaluate the accuracy of the tapping fee.
In this case, the Agreement provided that the Developer would perform some off-site sewer work and would pay the Authority for its costs and expenses in inspecting the Developer’s work, as well as other administrative costs that it incurred. If there is a dispute regarding those administrative costs, the property owner is required to challenge them within 60 days of billing of those, costs and the matter is then submitted to arbitration on a strict schedule. Section 5607(30) of the MAA, 53 Pa.C.S. §. 5607(30). •
Under this Agreement, there was also an additional provision that the Developer was to pay the Authority an agreed-upon price of $6,875.00 per EDU, and that there was no reservation of the right to challenge the tapping fee in the Agreement. Notwithstanding that/it agreed to pay a certain amount, the Developer is attempting to challenge the underlying calculation of the tapping fees as, if they were not fixed by the Agreement. The question then is can property owners challenge the amount of the tapping fee and.when can they challenge it.
• Without definitively deciding the issue, there seems to me to be only two possible ways to challenge the fee. When a property owner-desires to connect to a sewer system, there is no written agreement between the property owner and the local authority or municipality. Normally, as a prerequisite to obtaining a building permit from the local municipality, the property owner has' to show proof that it can dispose of solid waste whether by an approved septic system or a tap-in to an approved sewage system. When the owner obtains the permission to tap-in, he or she, pays the required fee. If, at that time, the property owner believes that the amount is excessive, he or she can pay the fee under protest and bring a challenge, like all administrative determinations, under the Local Agency Law[4] that the fee is not properly calculated, with subsequent appeals to the common pleas court. In some circumstances, 'though, before the permit process has even begun, a property owner may be able to challenge the fee through an action under the Declaratory Judgments Act.[5]
While I believe that a property owner can normally challenge the fee as outlined above, I. disagree that, in this case, the Developer can challenge the amount here because it agreed to pay $6,875.00 per EDU under the Agreement and can pay no more or no less. However, because this issue is not before us, I concur with the majority’s result.

. The Developer ultimately paid for 54 tapping fees totaling.$372,125.00, and received a credit for 36 tapping fees totaling $252,000.00, reflecting the Authority’s share of the cost of the Developer’s off-site improvements.

. Later, on December 21, 1999, the Authority approved Resolution 99-12-21 (1999 Resolution) which increased the tapping fees to $7,000.00 per EDIT, effective January 1, 2000.

. 53 Pa.C.S. §§ 5601-5623.

. 2 Pa.C.S. §§ 551-555, 751-754.

. 42 Pa.C.S.§§ 7531-7541.